| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ZIEVE, BRODNAX & STEELE, LLP<br>LESLIE M. KLOTT, ESQ. #279622<br>ERIN M. MCCARTNEY, ESQ. #308803<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>Phone: (714) 848-7920<br>Facsimile: (714) 908-7807<br>Email: bankruptcy@zbslaw.com<br><br>☐ Individual appearing without attorney<br>☒ Attorney for Movant | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| In re:<br><br>Melvin T. Marks and Maria S Peponas | CASE NO.: 6:16-bk-10369-MH<br><br>CHAPTER: 13 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: August 23, 2016<br><br>TIME: 10:00 a.m.<br><br>COURTROOM: 303 |

**Movant:** WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2, by Ocwen Loan Servicing, LLC, as servicer

**1. Hearing Location:**

☐ 255 East Temple Street, Los Angeles, CA 90012        ☐ 411 West Fourth Street, Santa Ana, CA 92701

☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101

☒ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                Page 1                          F 4001-1.RFS.RP.MOTION

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than *(date)* _____ and *(time)* _____ ; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 7/28/2016

                                    Zieve, Brodnax & Steele, LLP
                                      Printed name of law firm (if applicable)

                                      Erin M. McCartney
                                      Printed name of individual Movant or attorney for Movant

                                        /s/ Erin M. McCartney
                                      Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 2                                F 4001-1.RFS.RP.MOTION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

**1. Movant is the:**

- ☐ **Holder:** Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.
- ☐ **Beneficiary:** Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.
- ☐ **Servicing agent** authorized to act on behalf of the Holder or Beneficiary.
- ☒ **Other** (*specify*): Movant is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Movant, directly or through an agent, has possession of the promissory note and the promissory note is either made payable to Movant or has been duly endorsed in blank.

**2. The Property at Issue (Property):**

   a. Address:

   *Street address:* 3701 Carmino Anguilla
   *Unit/suite number:*
   *City, State, zip code:* Riverside, CA 92503

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __2__ ):

**3. Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on (*date*) __01/15/2016__ .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) _____.

   c. ☒ A plan, if any, was confirmed on (*date*) __03/17/2016__ .

**4. Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:
   
   (1) ☐ Movant's interest in the Property is not adequately protected.
   - (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.
   - (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.
   - (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.
   
   (2) ☐ The bankruptcy case was filed in bad faith.
   - (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.
   - (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.
   - (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.
   - (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.
   - (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.
   - (F) ☐ Other (*see attached continuation page*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 3                              F 4001-1.RFS.RP.MOTION

(3) ☒ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
          ☐ Preconfirmation   ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☒ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____.
    which is  ☐ prepetition  ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

**5. Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

**6. Evidence in Support of Motion: (*Declaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☐ Other:

**7. ☐ An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                             Page 4                            F 4001-1.RFS.RP.MOTION

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. §362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:

   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  7/28/2016

                                             Zieve, Brodnax & Steele, LLP
                                             Printed name of law firm (if applicable)
                                             Erin M. McCartney
                                             Printed name of individual Movant or attorney for Movant

                                             /s/ Erin M. McCartney
                                             Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                                                Page 5                                           F 4001-1.RFS.RP.MOTION

# REAL PROPERTY DECLARATION

I, (print name of Declarant) ___Shilundra Lidell_____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

   a. ☐ I am the Movant

   b. ☐ I am employed by Movant as (state title and capacity):

   c. ☒ Other (specify): I am a _____Contract Management Coordinator_____ of Ocwen Loan Servicing, LLC the duly authorized and acting loan servicing agent for WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2, Movant.

2. a. ☐ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☒ Other (see attached): See Attachment Page.

3. The Movant is:

   a. ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.

      ☐ Beneficiary.

   d. ☒ Other (specify): Movant is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Movant, directly or through an agent, has possession of the promissory note and the promissory note is either made payable to Movant or has been duly endorsed in blank.

4. a.    The address of the Property is:

   *Street address*: 3701 Carmino Anguilla
   *Unit/suite number*:
   *City, State, zip code*: Riverside, CA 92503

   b.    The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

   See Exhibit 2

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

a. ☒ Debtor's principal residence     b. ☐ Other residence
c. ☐ Multi-unit residential     d. ☐ Commercial
e. ☐ Industrial     f. ☐ Vacant land
g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

a. ☒ Sole owner
b. ☐ Co-owner(s) (*specify*):
c. ☐ Lienholder (*specify*):
d. ☐ Other (specify):
e. ☒ The Debtor ☒ did ☐ did not list the Property in the Debtor's schedules.
f. ☒ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☒ trust deed.

     The deed was recorded on (*date*) __06/16/2006__ .

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (specify) _____

a. ☒ A true and correct copy of the document as recorded is attached as Exhibit __2__ .
b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit __1__ .
c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit __3__ .

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: [Plus Deferred Balance, if any] | $ | $ | $ 205,133.48 |
| b. | Accrued interest: | $ | $ | $ 2,659.92 |
| c. | Late charges | $ | $ | $ 85.56 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 1,194.81 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 1,723.98 |
| f. | Less suspense account or partial balance paid: | $[            ] | $[            ] | $[ 145.44 ] |
| g. | TOTAL CLAIM as of (*date*):07/01/2016 | $ | $ | $ 210,652.31 |

h. ☐ Loan is all due and payable because it matured on (date) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):
a. Notice of default recorded on (*date*) __11/03/2015__ or ☐ none recorded.
b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.
c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.
d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.
e. Foreclosure sale already held on (*date*) _____ or ☒ none held.
f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014            Page 7            F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit __4__ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ _____ for the month of _____ 20 _____ .

    b. Number of payments that have come due and were not made: _____ . Total amount: $ _____

    c. Future payments due by time of anticipated hearing date (*if applicable*):
    An additional payment of $ _____ will come due on (*date*) _____ , and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $ _____ will be charged to the loan.

    d. The fair market value of the Property is $ _____ established by:
      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____
      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____
      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____
      (4) ☐ Other (*specify*):

    **e. Calculation of equity/equity cushion in Property:**

    Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (if any) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** | | | $ |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:
      (1) ☐ Preliminary title report.
      (2) ☐ Relevant portions of the Debtor's schedules.
      (3) ☐ Other (*specify*):

    g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
    I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ _____ and is _____ % of the fair market value of the Property.

    h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
    By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ _____

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☐ Estimated costs of sale: $ _____ (estimate based upon _____ % of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☒ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

  a. A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date:  03/03/2016 .
    A plan confirmation hearing currently scheduled for *(or concluded on)* the following date: __03/03/2016__ .
    A plan was confirmed on the following date *(if applicable)*:  03/17/2016 .

  b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit  4 .)

  c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| 4 | | $ 674.65 | $ 2,698.60 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

  d. Postpetition advances or other charges due but unpaid:               $
    *(For details of type and amount, see Exhibit _____)*

  e. Attorneys' fees and costs:                                $
    *(For details of type and amount, see Exhibit _____)*

  f. Less suspense account or partial paid balance:          $[      0.00    ]
               TOTAL POSTPETITION DELINQUENCY:    $     **2698.60**

  g. Future payments due by time of anticipated hearing date (if applicable):  1 
    An additional payment of $ ___674.65___ will come due on __08/01/2016__ , and on
    the _1st_ day of each month thereafter. If the payment is not received by the _15th_ day of the month, a late
    charge of $ ___0% of Payment___ will be charged to the loan.

  h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
    $ _670.86_____ received on *(date)* _03/26/2016_____
    $ _674.65_____ received on *(date)* _06/29/2016_____
    $ _None_____ received on *(date)* _None_____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
    A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
    13 trustee regarding receipt of payments under the plan (attach LBR form F 4001-1.DEC.AGENT.TRUSTEE).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 9                         **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____ which is ☐ prepetition ☐ postpetition

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (*specify*):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was  ☐ was not granted

      2. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was  ☐ was not granted

      3. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was  ☐ was not granted

☐ See attached continuation page for information about other bankruptcy cases affecting the Property.
☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 10                              F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


_7/20/2016_
Date

_____
Shilundra Lidell
**Printed Name**
Contract Management Coordinator

_____
Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 11                          F 4001-1.RFS.RP.MOTION

| In re (Short Title)<br>Melvin T. Marks and Maria S Peponas | CHAPTER: 13 |
|---|---|
| Debtor(s) | Case No: 6:16-bk-10369-MH |

## ATTACHMENT PAGE

(**MOVANT**: WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee under POOLING AND SERVICING AGREEMENT Dated as of October 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2 by Ocwen Loan Servicing, LLC, as servicer)

## ATTACHMENT 2.b.

☒    I have access to the bankruptcy books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 13                          F 4001-1.RFS.RP.MOTION

**ZIEVE, BRODNAX, & STEELE, LLP**
**LESLIE M. KLOTT, ESQ. #279622**
**ERIN M. MCCARTNEY, ESQ. #308803**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**
**Phone: (714) 848-7920**
**Facsimile: (714) 908-7807**
**Email: bankruptcy@zbslaw.com**

Attorney(s) for Movant, WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee under POOLING AND SERVICING AGREEMENT Dated as of October 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2, by Ocwen Loan Servicing, LLC, as servicer

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Melvin T. Marks and Maria S Peponas,<br><br>Debtor(s). | Case No.: 6:16-bk-10369-MH<br>Chapter 13<br><br>**AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY** |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee under POOLING AND SERVICING AGREEMENT Dated as of October 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2, by Ocwen Loan Servicing, LLC, as servicer, its assignees and/or successors in interest,<br><br>Movant,<br><br>vs.<br><br>Melvin T. Marks and Maria S Peponas, Debtor(s),<br>Rod (MH) Danielson (TR), Trustee,<br><br>Respondents. | **HEARING:**<br>Date:    August 23, 2016<br>Time:    10:00 a.m.<br>Place:    United States Bankruptcy Court<br>    Courtroom  303<br>    3420 Twelfth Street,<br>    Riverside, CA 92501 |

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

1

I, _____Shilundra Lidell_____, declare under penalty of perjury as follows:

1. I am employed as a(n) _____Contract Management Coordinator_____ of Ocwen Loan Servicing, LLC and am authorized to sign this affidavit on behalf of Ocwen Loan Servicing, LLC, as servicer for WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee under POOLING AND SERVICING AGREEMENT Dated as of October 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2 ("Movant"). This affidavit is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2. I make this affirmation based upon my review of the records with regard to this underlying loan transaction, which are kept in the ordinary course of business of Ocwen Loan Servicing, LLC. As part of my job responsibilities for Ocwen Loan Servicing, LLC, I have personal knowledge of and am familiar with the types of records maintained by Ocwen Loan Servicing, LLC in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Ocwen Loan Servicing, LLC that pertain to the Loan and extensions of credit given to Debtor(s) concerning the property securing such Loan.

3. The information in this affidavit is taken from Ocwen Loan Servicing, LLC's business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen Loan Servicing, LLC's regularly conducted business activities; and (c) it is the regular practice of Ocwen Loan Servicing, LLC to make such records.

4. Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Motion for Relief for WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee under POOLING AND SERVICING AGREEMENT Dated as of

October 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2 and is entitled to proceed accordingly. Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee under POOLING AND SERVICING AGREEMENT Dated as of October 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2. WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee under POOLING AND SERVICING AGREEMENT Dated as of October 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2 has the right to foreclose because Movant is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Movant, directly or through an agent, has possession of the promissory note and the promissory note is either made payable to Movant or has been duly endorsed

5.    Debtor aka Melvin Marks has executed and delivered or is otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. A true and correct copy of the Note is attached to the Affidavit in Support of Motion for Relief as **Exhibit "1"**.

6.    Debtor aka Melvin Marks has executed and delivered or is otherwise obligated with respect to that certain Deed of trust referenced in the Motion (the "Deed of trust"). Pursuant to the Deed of Trust, all obligations of the Debtor under the Note and Deed of Trust with respect to the Loan are secured by certain real property located at 3701 Carmino Anguilla , Riverside,

CA 92503.  A true and correct copy of the Deed of Trust is attached to the Affidavit in Support of Motion for Relief hereto as **Exhibit "2"**.

7.      Movant is the original mortgagee or beneficiary or the assignee of the Deed of Trust.  A true and correct copy of the assignment(s) of the Deed of Trust is attached to the Affidavit in Support of Motion for Relief as **Exhibit "3"**.

8.      As of July 1, 2016, there are one or more defaults in paying Debtors post-petition amounts due with respect to the Note.

9.      As of July 1, 2016, the total unpaid balance of the Note is $205,133.48 which includes the unpaid principal balance of $132,997.99 and a deferred principal balance of $72,135.49.

10.     The following chart sets forth those post-petition payments, due pursuant to the terms of the Note, that have been missed by the Debtor as of July 1, 2016:

| Number of Missed Payments | From | To | Missed Monthly Principal and Interest | Missed Monthly Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 4 | 4/1/2016 | 7/1/2016 | $427.89 | $246.76 | $674.65 | $2,698.60 |
| Less post-petition partial payments (suspense balance): | | | | | | ($0.00) |
| | | | | | | Total: **$2,698.60** |

11.     As of July 1, 2016 the total post petition arrearage/delinquency is $2,698.60, consisting of (i) the foregoing total of missed post petition payments in the amount of $2,698.60, plus (ii) the following post petition fees:

| Type of Fee | Amount of Fee |
|---|---|
| N/A | N/A |

4

12.    Attached hereto as **Exhibit "4"** is a post-petition payment history with respect to the Loan.

13.    On July 1, 2013 (Modification Effective Date) Melvin Marks and Ocwen Loan Servicing, LLC. entered into a Loan Modification Agreement.  A true and correct copy of the Loan Modification Agreement is attached hereto as **Exhibit "5"**.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20 day of July, 2016, at West Palm Beach (city), FL (state).

Name:    Shilundra Lidell
Title:    Contract Management Coordinator

STATE OF FLORIDA            )
COUNTY OF PALM BEACH        )


The foregoing instrument was acknowledged and sworn before me this 20 day of July, 2016, by __Shilundra Lidell__ as a Contract Management Coordinator of Ocwen Loan Servicing, LLC, who is personally known to me or who has produced _____ as identification.

NOTARY PUBLIC in and for the State of Florida
Christopher Kelley
(NAME)
My commission expires 12/30/16

Notary Public State of Florida
Christopher Kelley
My Commission EE 861683
Expires 12/30/2016

Loan Number: ████████

# ADJUSTABLE RATE NOTE
### (6 Month LIBOR Index - Rate Caps)
### (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JUNE 6, 2006                    CHINO                   CALIFORNIA
[Date]                          [City]                  [State]

3701 CARMINO ANGUILLA, RIVERSIDE, CALIFORNIA 92503
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 283,600.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is AMERICAN FINANCIAL NETWORK, INC., A CALIFORNIA CORPORATION .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.390 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on AUGUST 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 14726 RAMONA AVENUE #204, CHINO, CALIFORNIA 91710 , or at a different place if required by the Note Holder.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be U.S. $ 1,843.28 . This amount may change.

**(C)   Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

EXHIBIT - 1

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)   Change Dates**

The interest rate I will pay may change on the  1st  day of  JULY, 2008                 , and may change on that day every  6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)   The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of the choice.

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  SIX AND 250/1000                percentage point(s) (    6.250    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on a date that is 10 years after the Maturity Date (such date being referred to herein as the "Amortization Date") at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. I understand that as a result of the Amortization Date being after the Maturity Date, I will have a balloon payment on the Maturity Date.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          10.390 % or less than          7.390 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE AND 000/1000                percentage points (1.000         %) from the rate of interest I have been paying for the preceding    6    months. My interest rate will never be greater than          13.890 %, or less than          7.390 %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates on my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE 6-MONTH LIBOR INDEX
(FIRST BUSINESS DAY LOOKBACK) - Single Family
03/30/06                          Page 2 of 4

*DocMagic* ☎Forms℠ 800-649-1362
www.docmagic.com

EXHIBIT - 1

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)    Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of         15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)    Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)    Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)    No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)    Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE 6-MONTH LIBOR INDEX
(FIRST BUSINESS DAY LOOKBACK) - Single Family
03/30/06                                        Page 3 of 4

DocMagic *eForms* 800-649-1362
www.docmagic.com

*MM*

EXHIBIT - 1

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of a ll sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrow must pay all sums secured by this Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | | |
|---|---|---|
| _MRK_ 06-06-2006 (Seal) | | _____ (Seal) |
| MELVIN MARKS -Borrower | | -Borrower |
| Pay To The Order Of | | |
| WMC Mortgage Corp. (Seal) | | _____ (Seal) |
| Without Recourse -Borrower | | -Borrower |
| American Financial Network, Inc. | | |
| _____ (Seal) | | _____ (Seal) |
| -Borrower | | -Borrower |

Tamara Williams, Vice President
Texas Capital Bank, NA
As Attorney-In-Fact for:

Pay to the order of

_without recourse._

American Financial Network, Inc

Jessica Fuentes
Assistant Secretary
WMC Mortgage Corp.

_[Sign Original Only]_

MULTISTATE ADJUSTABLE RATE NOTE 6-MONTH LIBOR INDEX
(FIRST BUSINESS DAY LOOKBACK) - Single Family
03/30/06                                                                    Page 4 of 4

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT - 1

Loan Number: ███████

# ADDENDUM TO ADJUSTABLE RATE NOTE

THIS ADDENDUM is made this 6th day of    JUNE  2006    and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note made by the undersigned (the "Borrower") in favor of    AMERICAN FINANCIAL NETWORK, INC., A CALIFORNIA CORPORATION
(the "Lender") and dated the same date as this Addendum.

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or Adjustable Rate Note):

NOTWITHSTANDING THE 40-YEAR AMORTIZATION PERIOD, THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE NOTE AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. ACCORDINGLY, IF THIS LOAN HAS NOT BEEN SATISFIED, YOU WILL HAVE A BALLOON PAYMENT ON THE MATURITY DATE.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.

_____  06-06-2006
Borrower MELVIN MARKS    Date         Borrower                    Date


_____
Borrower                    Date         Borrower                    Date


_____
Borrower                    Date         Borrower                    Date


ADDENDUM TO ADJUSTABLE RATE NOTE
03/29/06

DocMagic *eFerms* 800-649-1362
www.docmagic.com

EXHIBIT - 1

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: ███████

Date: JUNE 6, 2006

Borrower(s): MELVIN MARKS

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this    6th    day of
JUNE,    2006    , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of AMERICAN
FINANCIAL NETWORK, INC., A CALIFORNIA CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section    5    of the Note is amended to read in its entirety as follows:

5    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment
of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my partial
Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest
rate increase.
If within TWENTY-FOUR  ( 24  ) months from the date the Security Instrument is
executed I make a full Prepayment or one or more partial Prepayments, and the total of all such
Prepayments in any 12-month period exceeds TWENTY    percent
(  20.000  %) of the original principal amount of the loan, I will pay a Prepayment charge
in an amount equal to  SIX    ( 6  ) months' advance interest on the amount by
which the total of my Prepayments within any 12-month period exceeds TWENTY
percent (  20.000  %) of the original principal amount of the loan.

EXHIBIT - 1

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.


Borrower MELVIN MARKS          Date          Borrower          Date

06-06-2006


Borrower          Date          Borrower          Date


Borrower          Date          Borrower          Date


CALIFORNIA PREPAYMENT ADDENDUM TO NOTE
(CIVIL CODE PROVISION)
12/13/05                    Page 2 of 2                    DocMagic *eForms* 800-649-1362
                                                           www.docmagic.com

EXHIBIT - 1

*Ticor Title Co Fullerton*

Recording Requested By:
AMERICAN FINANCIAL NETWORK, INC.

**DOC # 2006-0437863**
06/16/2006 08:00A Fee:78.00
Page 1 of 24
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

And After Recording Return To:
POST CLOSING AMERICA, ATTN: PAULA MAHLER
11241 RICHMOND AVENUE, SUITE E-105
HOUSTON, TEXAS 77082
Loan Number: ███████

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|------|-------|-----|-------|
|   |   |   | 24   |      |    |      |       |     |       |
| A | R | L |      |      |    | COPY | LONG  | REFUND | NCHG | EXAM |

———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated JUNE 6, 2006 , together with all Riders to this document.
**(B)** **"Borrower"** is MELVIN MARKS, AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument.
**(C)** **"Lender"** is AMERICAN FINANCIAL NETWORK, INC.

Lender is a CALIFORNIA CORPORATION organized
and existing under the laws of CALIFORNIA
Lender's address is 14726 RAMONA AVENUE #204, CHINO, CALIFORNIA 91710

Lender is the beneficiary under this Security Instrument.
**(D)** **"Trustee"** is TICOR TITLE COMPANY OF CALIFORNIA
1440 N. HARBOR BLVD., SUITE 108, FULLERTON, CALIFORNIA 92835

**(E)** **"Note"** means the promissory note signed by Borrower and dated JUNE 6, 2006 .
The Note states that Borrower owes Lender TWO HUNDRED EIGHTY-THREE THOUSAND SIX HUNDRED AND 00/100 Dollars (U.S. $ 283,600.00 )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2036 .
**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                          Page 1 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

(H)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider  ☒ Planned Unit Development Rider
☒ Balloon Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider  ☐ Second Home Rider
☐ Condominium Rider  ☒ Other(s) [specify]
      PREPAYMENT RIDER

(I)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "**Escrow Items**" means those items that are described in Section 3.

(M)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

      COUNTY                    of              RIVERSIDE                   :
  [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

LOT 100 OF TRACT NO. 25547, IN THE COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 236, PAGE(S) 72 TO 90,
INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.
A.P.N.: 135-482-001-6

---

*DocMagic* *eForms* 800-649-1362
www.docmagic.com



EXHIBIT - 2

which currently has the address of   3701 CARMINO ANGUILLA

[Street]

RIVERSIDE                                , California   92503     ("Property Address"):

[City]                                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

DocMagic *e*Forms 800-649-1362
www.docmagic.com

EXHIBIT - 2

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA,

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.    Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee

DocMagic *eFarms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

EXHIBIT - 2

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

DocMagic *EForms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in

EXHIBIT - 2

this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

*DocMagic* ☎ *Forms* 800-649-1362
www.docmagic.com



EXHIBIT - 2

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

*DocMagic* 800-649-1362
www.docmagic.com

EXHIBIT - 2

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

EXHIBIT - 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ 06-06-2006 (Seal)          _____ (Seal)
MELVIN MARKS                      -Borrower                                         -Borrower

_____ (Seal)                     _____ (Seal)
                                  -Borrower                                         -Borrower

_____ (Seal)                     _____ (Seal)
                                  -Borrower                                         -Borrower

Witness:                                           Witness:

_____                            _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                          Page 13 of 14                    DocMagic eFormaa 800-649-1362
                                                                        www.docmagic.com

EXHIBIT - 2

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of California          )
                             ) ss.
County of *Riverside*        )

On *6th June, 2006* before me, *Susan Papai, Notary Public*

personally appeared    MELVIN MARKS

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SUSAN PAPAI
Commission # 1518169
Notary Public - California
Riverside County
My Comm. Expires Oct 7, 2008

NOTARY SEAL

_____
NOTARY SIGNATURE

*SUSAN PAPAI*
(Typed Name of Notary)

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

# PREPAYMENT RIDER

Loan Number: ███████

Date: JUNE 6, 2006

Borrower(s): MELVIN MARKS

      **THIS PREPAYMENT RIDER** (the "Rider") is made this 6th    day of JUNE 2006     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of AMERICAN FINANCIAL NETWORK, INC., A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

      3701 CARMINO ANGUILLA, RIVERSIDE, CALIFORNIA 92503
[Property Address]

      **ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

      5   . **BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
      I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
      The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
      If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

EXHIBIT - 2

If within TWENTY-FOUR ( 24      ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent (      20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to   SIX      (   6   ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY            percent (   20.000  %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ ᴼᴸ ᴼᴳ⁻²ᵘᴼ ⁵ (Seal)        _____ (Seal)
MELVIN MARKS            -Borrower                                          -Borrower


_____ (Seal)        _____ (Seal)
                         -Borrower                                          -Borrower


_____ (Seal)        _____ (Seal)
                         -Borrower                                          -Borrower

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

——————————————— [Space Above This Line For Recording Data] ———————————————

Loan Number: ▬▬▬▬▬

# BALLOON RIDER

THIS BALLOON RIDER is made this 6th day of JUNE, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to AMERICAN FINANCIAL NETWORK, INC., A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3701 CARMINO ANGUILLA, RIVERSIDE, CALIFORNIA 92503
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

NOTWITHSTANDING THE 40 YEAR AMORTIZATION PERIOD, THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE NOTE AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. ACCORDINGLY, IF THIS LOAN HAS NOT BEEN SATISFIED, YOU WILL HAVE A BALLOON PAYMENT ON THE MATURITY DATE.

————————————————————————————————————————————————————————

BALLOON RIDER - MULTISTATE
01/01/97

Page 1 of 2

DocMagic *€Forms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ 06 06 2006 (Seal)     _____ (Seal)
MELVIN MARKS                    -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                                 -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                                 -Borrower                                    -Borrower

BALLOON RIDER - MULTISTATE
01/01/97                                    Page 2 of 2                    DocMagic *eForms* 800-649-1362
                                                                            www.docmagic.com

EXHIBIT - 2

Loan Number: █████████

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    6th    day of
JUNE, 2006    , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date,
given by the undersigned (the "Borrower") to secure Borrower's Note to  AMERICAN
FINANCIAL NETWORK, INC., A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3701 CARMINO ANGUILLA, RIVERSIDE, CALIFORNIA 92503
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

FOUR SEASONS VILLAS

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and
which provides insurance coverage in the amounts (including deductible levels), for the periods, and against
loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but
not limited to, earthquakes and floods, for which Lender requires insurance, then:  (i) Lender waives the
provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property
insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the
Owners Association policy.

EXHIBIT - 2

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

EXHIBIT - 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
MELVIN MARKS                    -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

# ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (First Business Day of Preceding Month Lookback)

THIS ADJUSTABLE RATE RIDER is made this 6th day of JUNE, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to AMERICAN FINANCIAL NETWORK, INC., A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3701 CARMINO ANGUILLA, RIVERSIDE, CALIFORNIA 92503

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 7.390 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the 1st day of JULY, 2008 and may change on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

DocMagic *ℰFoRms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 250/1000 percentage point(s) ( 6.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on a date that is 10 years after the Maturity Date (such date being referred to herein as the "Amortization Date") at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. I understand that as a result of the Amortization Date being after the Maturity Date, I will have a balloon payment on the Maturity Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.390 % or less than 7.390 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.890 %, or less than 7.390 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period,

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT - 2

Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)            _____ (Seal)
MELVIN MARKS            -Borrower                                  -Borrower


_____ (Seal)            _____ (Seal)
                        -Borrower                                  -Borrower


_____ (Seal)            _____ (Seal)
                        -Borrower                                  -Borrower

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index
(First Business Day Lookback) - Single Family
01/27/06                    Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

EXHIBIT - 2



When Recorded Mail To:
**WMC MORTGAGE CORPORATION**
3100 THORNTON AVENUE,
BURBANK, CALIFORNIA 91504
Attn: MIRIAM PARADA

Prepared by.

~~AND AFTER RECORDING RETURN TO:~~
POST CLOSING AMERICA,
ATTN: PAULA MAHLER
11241 RICHMOND AVENUE,
SUITE E-105
HOUSTON, TEXAS 77082

Order No.
Escrow No.
Loan No.

**DOC # 2006-0751255**
10/11/2006 08:00A Fee:12.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
|   |   |   | 2    |      |     |      |      |     |      |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM 037 |

M
037

## Corporation Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to    WMC MORTGAGE
CORP.

all beneficial interest under that certain Deed of Trust dated   JUNE 6, 2006                executed by
MELVIN MARKS, AN UNMARRIED MAN

, Trustor,

to   TICOR TITLE COMPANY OF CALIFORNIA

, Trustee,

and recorded as Instrument No.     on  6-16-06               in book
page                , of Official Records in the County Recorder's office of  RIVERSIDE
County,  CALIFORNIA              , describing land therein as:
LOT 100 OF TRACT NO. 25547, IN THE COUNTY OF RIVERSIDE, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 236, PAGE(S) 72 TO
90, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.
A.P.N.: 135-482-001-6

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust. The original principal amount due
under this note(s) is $ 283,600.00          .

CALIFORNIA CORPORATION ASSIGNMENT OF DEED OF TRUST
04/05/06                                    Page 1 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT - 3

STATE OF ~~CALIFORNIA~~ Texas SS.
COUNTY OF ~~RIVERSIDE~~ Harris

On June 19, 2004 before me,
Monica Hernandez
personally appeared

Susan M. Thorpe
Agent

personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature

(This area for official notarial seal)

AMERICAN FINANCIAL
NETWORK, INC., A
CALIFORNIA CORPORATION

_Susan M Thorpe_

Susan M. Thorpe
Agent

EXHIBIT - 3

Recording Requested By/Return To:
WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

Attn:   (CORRESPONDENT)

Prepared By:
CHRISTINA FLORES

WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

**DOC # 2006-0751256**
10/11/2006 08:00A Fee:15.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
|   |   |   | 3    |      |     |      |      |     |      |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM |

## ASSIGNMENT OF DEED OF TRUST

MARKS
Loan #:
MIN:

Serv #:

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is  3100
THORNTON AVENUE BURBANK, CA 91504
does hereby grant, sell, assign, transfer and convey, unto Mortgage Electronic Registration Systems, Inc. (MERS), its
successors and assigns, a corporation organized and existing under the laws of Delaware (herein "Assignee"), whose address is
P.O. Box 2026, Flint, Michigan, 48501-2026, a certain Deed of Trust, dated  **June 6, 2006**  , made and executed
by **MELVIN MARKS, AN UNMARRIED MAN**

to  **WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION**
Trustee, such Deed of Trust having been given to secure payment of
**Two Hundred Eighty-Three Thousand Six Hundred And 00/100**
($  **283,600.00**    ) (Include the Original Principal Amount) which Deed of Trust is recorded as Instrument No.
2006-0437863 on  6-16-06  in book _____, page _____, Records
of  **RIVERSIDE**           County, State of CALIFORNIA, together with the note(s) and
obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under
such Deed of Trust.

See exhibit "A"

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and
conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this assignment of Deed of Trust on
**June 23, 2006**

Assignor: **WMC MORTGAGE CORP.**

Witness  Yelson mejia

Witness  Richard Fernandez

By: _____
(Signature)
JUAN SANTILLAN
Asst Secretary

MIN:
DocuTech Form 5206 (CA)
DOCUN1Y1
DOCUN1Y1.VTX 09/02/2005

MERS Phone: 1-888-679-6377
Page 1 of 2

Rev. 10/02

EXHIBIT - 3

State of *CA*
County of *Los Angeles*

On **June 23, 2006**            before me, **NESSA A. CERVANTEZ**                                , a Notary
Public, personally appeared  **JUAN SANTILLAN**                          , personally known to me ( or proved
to me on the basis of satisfactory evidence) to be the person(s), whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

Notary Public  **NESSA A. CERVANTEZ**

My Commission Expires:

NESSA A. CERVANTEZ
Commission # 1615271
Notary Public - California
Los Angeles County
My Comm. Expires Oct 21, 2009

MIN:
DocuTech Form 5206 (CA)
DOCUN1Y2
DOCUN1Y2.VTX  12/19/2005

MERS Phone: 1-888-679-6377
Page 2 of 2

Rev. 10/02

EXHIBIT - 3

EXHIBIT 'A'

LOT 100 OF TRACT NO. 25547, IN THE COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 236, PAGE(S) 72 TO 90,
INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.
A.P.N. : 135-482-001-6

EXHIBIT - 3

RECORDED AT REQUEST OF

DOC # 2012-0225443
05/16/2012 10:50 AM Fees: $24.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

WHEN RECORDED MAIL TO

When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: TVERBA

(FOR RECORDER'S USE ONLY)

## ASSIGNMENT OF DEED OF TRUST
### CALIFORNIA

EXHIBIT - 3

Prepared by: Nadine Alvarez
When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835
6770577439615
Attorney Code: 24110
MIN: ███████
MERS Ph.#: (888) 679 – 6377

## ASSIGNMENT OF DEED OF TRUST
## CALIFORNIA

This **ASSIGNMENT OF DEED OF TRUST** from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.(MERS)**, whose address PO Box 2026 Flint, MI 48501-2026, its successors and assigns, ("Assignor") to **WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-WM2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WM2**, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, (Assignee) its successors and assigns, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of **RIVERSIDE** County, State of **CALIFORNIA**, as follows;

Trustor: MELVIN MARKS
Trustee: TICOR TITLE COMPANY OF CALIFORNIA
Beneficiary: AMERICAN FINANCIAL NETWORK, INC.
Document Date: JUNE 06, 2006
Amount: $283,600.00
Date Recorded: JUNE 16, 2006            Document/Instrument/Entry Number: 2006-0437863
Property Address: 3701 CAMINO ANGUILLA, RIVERSIDE, CA

*Property more particularly described in the above referenced recorded Deed of Trust*
This Assignment is made without recourse, representation or warranty.
DATED: MAY 07, 2012.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**(MERS)**

BY: _____
NAME: Yamali Martinez
TITLE: Assistant Secretary

State of FLORIDA
County of PALM BEACH

On MAY 07, 2012, before me, _____**Jasmin Vazquez**_____, personally Yamali Martinez personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

_____
Signature of Notary
**Jasmin Vazquez**

JASMIN VAZQUEZ
MY COMMISSION # EE103493
EXPIRES June 15, 2015
(407) 398-0131  FloridaNotaryService.com

**EXHIBIT - 3**



**LARRY W. WARD**
**COUNTY OF RIVERSIDE**
**ASSESSOR-COUNTY CLERK-RECORDER**

Recorder
P.O. Box 751
Riverside, CA 92502-0751
(951) 486-7000

www.riversideacr.com

# NOTARY CLARITY

Under the provisions of Government Code 27361.7, I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

- 

Name of Notary:    Jasmin Vazquez

Commission #:    EE103493

Place of Execution:    Santa Fe Springs, Ca.

Date Commission Expires:    June 15, 2015

Date:    05.16.12

Signature:    Crystall Barsamian

Print Name:    Crystall Barsamian

ACR 186P-AS4RE0 (Rev. 09/2006)    Available in Alternate Formats

EXHIBIT - 3

| Name: | Melvin T. Marks |
|---|---|
| BK Case Number: | 16-10369-MH |
| Filing Date: | 1/15/2016 |
| Completed by: | kmpraffu |

| Due Date | Total Payment | Principal | Interest | Escrow | Optional Products | NOPC Filed Date |
|---|---|---|---|---|---|---|
| 4/1/2016 | $ 674.65 | $ 208.99 | $ 218.90 | $ 246.76 | | |
| 5/1/2016 | $ 674.65 | $ 209.34 | $ 218.55 | $ 246.76 | | |
| 6/1/2016 | $ 674.65 | $ 209.69 | $ 218.20 | $ 246.76 | | |
| 7/1/2016 | $ 674.65 | $ 210.04 | $ 217.85 | $ 246.76 | | |
| Total Due | $ 2,698.60 | $ 838.06 | $ 873.50 | $ 987.04 | $ - | |

EXHIBIT - 4 Post Due Tab

| Name: | Melvin T. Marks | | | | | |
|---|---|---|---|---|---|---|
| **BK Case Number:** | 16-10369-MH | | | | | |
| **Filing Date:** | 1/15/2016 | | | | | |
| **Post First Due:** | 2/1/2016 | | **Completed By:** | kmpraffu | | |
| **Post-Petition Due** | **Date Received** | **Amount Received** | **Amount Applied** | **Suspense Application** | **Suspense Balance** | **Comments** |
| 2/1/2016 | 3/26/2016 | $ 670.86 | $ 670.86 | $ - | $ - | Short Payment Accpeted |
| 3/1/2016 | 6/29/2016 | $ 674.65 | $ 674.65 | $ - | $ - | |

EXHIBIT - 4 Post Petition Payment History

-BD-PRA

Investor Loan # _____

**After Recording Return To:**

_____

_____

_____

1.2.26

This document was prepared by _____

_____ [Space Above This Line For Recording Data] _____

## HOME AFFORDABLE MODIFICATION AGREEMENT

## (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): **Melvin Marks**

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **6/6/2006**

Loan Number: ███████

Property Address: **3701 Camino Anguilla  Riverside, CA 92503** ("Property")
*[and Legal Description if recordation is necessary]*

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Servicer and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.  I live in the Property as my principal residence, and the Property has not been condemned;

   C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

   D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

   E.  Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F.  If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

   G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

   H.  In cases where I received a discharge in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Servicer agrees, based on this representation, that I will not have personal liability on the debt pursuant to this Agreement.

OLS Form (rev. 1/13)
503319
*NMLS # 1852*

EXHIBIT - 5

-BD-PRA

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   TIME IS OF THE ESSENCE under this Agreement;

B.   If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

C.   I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 7/1/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 7/1/2013.

A.   The new Maturity Date will be: 9/1/2036, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be  $309,706.45 (the "New Principal Balance").

C.   $168,406.45 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition,  $144,406.45 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 4/1/2013, the Servicer shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is  $141,300.00. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 7/1/2013 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 7/1/2013. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-Loans Maturity | 2.00000% | 7/1/2013 | $427.89 | $190.84, adjusts annually after year 1 | $618.73, adjusts annually after year 1 | 7/1/2013 | 279 |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

OLS Form (rev. 1/13)
503319
NMLS # 1852

EXHIBIT - 5

-BD-PRA

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full (1) the Deferred Principal Balance (deferred principal balance will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the deferred principal balance.), if any, and (2) any other amounts still owed under the Loan Documents, by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance (The new principal balance less the deferred principal balance shall be referred to as the "interest bearing principal balance), or (iii) the new Maturity Date.

G.  If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements**. I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

OLS Form (rev. 1/13)
503319
*NMLS # 1852*

EXHIBIT - 5

-BD-PRA

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E.    That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.    That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.    That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.    That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J.    If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K.    That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

L.    Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M.    Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026  Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

N.    That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

OLS Form (rev. 1/13)
503319
*NMLS # 1852*

EXHIBIT - 5

-BD-PRA

☐ *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _____    _____6 / 19 / 13_____    Date
                        Melvin Marks

State of <u>California</u>)

County of _____)

On _____ before    me, _____personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

_____

Sign Here→ _____    ____/____/_____    Date

State of <u>California</u>)

County of _____)

On _____ before    me, _____personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

OLS Form (rev. 1/13)
503319
*NMLS # 1852*

EXHIBIT - 5

-BD-PRA

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.**

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _____     ____/____/_____ Date

State of <u>California</u>)

County of _____)

On _____ before    me,    _____personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

---

Sign Here→ _____     ____/____/_____ Date

State of <u>California</u>)

County of _____)

On _____ before    me,    _____personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

Servicer _____          BY _____
JUL 12 2016                                  **Tamara Casseus**
_____                    **Contract Management Modifications Coordinator**
Date
If applicable: _____
   Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

OLS Form (rev. 1/13)
503319
NMLS # 1852

EXHIBIT - 5

-BD-PRA

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Melvin Marks

Servicer ("Servicer"): .

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):

Loan Number:

Property Address: 3701 Camino Anguilla  Riverside, CA 92503

THIS BALLOON PAYMENT DISCLOSURE is made this 6 day of March, 2013, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement. The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of  $48,135.48 in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments.  This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 7/1/2013 up to 4/1/2014 | $241,438.07 - NO ADJUSTMENT |
| 4/1/2014 up to 4/1/2015 | $193,302.59 |
| 4/1/2015 up to 4/1/2016 | $145,167.11 |
| 4/1/2016 up to 9/1/2036 | $97,031.62 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF  $241,438.07 WILL BE DUE AND PAYABLE IN FULL ON 9/1/2036, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM.   The balloon payment on the loan modification I have applied for is due 279 months from the effective date of the modification.

*Notice required by North Dakota law:*

**CAUTION TO BORROWER:  IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN.   KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.**

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure.  Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due.  In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

OLS Form (rev. 1/13)
503319
*NMLS # 1852*

EXHIBIT - 5

-BD-PRA

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.**

SIGN

_____
Borrower

6 - 18 - 13
_____
Date

SIGN

_____
Borrower

_____
Date

OLS Form (rev. 1/13)
503319
*NMLS # 1852*

EXHIBIT - 5

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
30 Corporate Park, Suite 450
Irvine, CA 92606

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __7/28/2016__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Debtors' Counsel: James D. Hornbuckle, jdh@cornerstonelawcorp.com
Chapter 13 Trustee: Rod Danielson, notice-efile@rodan13.com
United States Trustee (RS): ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __7/28/2016__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/28/2016 | Michele Dapello | /s/ Michele Dapello |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   Page 12                                   **F 4001-1.RFS.RP.MOTION**

| In re                          (SHORT TITLE) | CHAPTER: 13 |
|---|---|
| Melvin T. Marks and Maria S Peponas<br>Debtor(s). | CASE NO.: 6:16-bk-10369-MH |

**ADDITIONAL SERVICE INFORMATION (if needed):**

**SERVED BY UNITED STATES MAIL:**

**DEBTOR:**
Melvin T. Marks
3701 Carmino Anguilla
Riverside, CA 92503

**DEBTOR:**
Maria S. Peponas
3701 Carmino Anguilla
Riverside, CA 92503

**DEBTORS' COUNSEL**
James D. Hornbuckle
18000 Studebaker Rd., Suite 700
Cerritos, CA 90703

**PRESIDING JUDGE (exhibits tabbed pursuant to LBR 9004-1(a)):**
United States Bankruptcy Court
Chambers of Honorable Mark D. Houle
3420 Twelfth Street
Riverside, CA 92501